**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAD JOSEPH BELL, HERMOINE KING, GABRIELLA BELL, and JILL JONES,** individually and on behalf of all others similarly situated, | **Civil Action No.: 21-11816 (ES) (ESK)** |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| **GEORGE THOMAS DAVE and GT'S LIVING FOODS, LLC,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendants George Thomas Dave ("GT Dave") and GT's Living Foods, LLC's motion to dismiss the class action Complaint of Plaintiffs Lad Joseph Bell, Hermoine King, Gabriella Bell, and Jill Jones for lack of jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 13; *see also* D.E. No. 13-1 ("Mov. Br.")). Having considered the parties' submissions, the Court decides the matter without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

### A.     Factual Background

GT's Living Foods sells kombucha products throughout the United States. (D.E. No. 1 ("Compl.") ¶ 1). Kombucha is a fermented beverage created from the mixture of tea and sugar, resulting in "some naturally occurring alcohol due to fermentation." (Mov. Br. at 1; Compl. ¶¶

38–39).  The alcohol content in kombucha may increase after the bottle leaves the production facility depending on a number of factors, including time and temperature.  (Compl. ¶ 39).  The product at issue in this case is Synergy Kombucha.  (*Id.* ¶ 1).  After it is bottled in California, Synergy Kombucha is either distributed to retail stores throughout the United States or sold directly to consumers through the company's website.  (*Id.* ¶ 48).  Plaintiffs allege that Synergy Kombucha is marketed to consumers as a health product and sold online and in retail stores among non-alcoholic beverages.  (*Id.* ¶¶ 2 & 63).  Plaintiffs further allege Synergy Kombucha is commonly sold in retail stores that do not have liquor licenses and is available to any consumer regardless of age, thereby creating the appearance that Synergy Kombucha is not classified as an alcoholic beverage.  (*Id.* ¶¶ 64–65).  Notwithstanding, Plaintiffs admit that each bottle of Synergy Kombucha contains a label with the following statement: "Kombucha is a fermented tea that has naturally occurring alcohol.  Do not consume if you are avoiding alcohol due to pregnancy, allergies, sensitivities, or religious beliefs."  (*Id.* ¶ 60).  That said, Plaintiffs allege this label is insufficient because Synergy Kombucha's alcohol by volume ("ABV") is too high.  (*Id.* ¶ 2).

Plaintiffs allege "every bottle of Synergy Kombucha contains greater than 0.5% ABV by the time the product reaches consumers, thereby making Synergy Kombucha an alcoholic beverage subject to" regulations set forth by the United States Department of Treasury's Alcohol and Tobacco Tax and Trade Bureau ("TTB") and the State of New Jersey's Office of the Attorney General's Division of Alcoholic Beverage Control.  (*Id.* ¶¶ 56 & 66).  Plaintiffs base this allegation on laboratory tests allegedly conducted in Kentucky on four bottles of Synergy Kombucha in various flavors.  (*Id.* ¶¶ 88–93).  The tests revealed that, after being purchased directly from refrigerated shelves in non-alcoholic sections of various retail stores and

transported in refrigerated conditions to the testing facility, the bottles contained alcohol content greater than 0.5% ABV.  (*Id.* ¶¶ 90–91, Ex. A, ¶ 92 & Ex. B).[1]  Plaintiffs also allege that Blake Ebersole, an expert chemist and scientific consultant in kombucha alcohol testing, obtained similar results based on several samples of "GT's Enlightened Kombucha and Enlightened Synergy" drinks[2] in studies conducted between December 2015 and February 2019.[3]  (Compl. ¶¶ 94, 97 & Ex. C ¶¶ 12, 44, 47, 57, 63 & 68).[4]  According to Plaintiffs, the true ABV of Synergy Kombucha requires a health warning on the label pursuant to the Alcoholic Beverage Labeling Act of 1998.  (*Id.* ¶ 42 (citing 27 U.S.C. § 215)).

Thus, Plaintiffs allege, Synergy Kombucha is "actually a mislabeled alcoholic beverage that misrepresents and/or fails to disclose [its] true alcoholic content."  (*Id.* ¶ 2).  Plaintiffs allege Defendants knew or should have known that Synergy Kombucha contains greater than 0.5% ABV by the time the products reach consumers based on allegations made and evidence submitted in previous lawsuits, research, and "various forms of media coverage."  (*Id.* ¶ 57). Plaintiffs allege that by "failing to disclose the true alcoholic nature of the product," Defendants "engage in the unlawful sale of alcohol to people of all ages, including those under the age of 21 and those who should not consume alcohol for a wide range of personal, religious and/or health reasons."  (*Id.* ¶ 4).   Plaintiffs further allege Synergy Kombucha is an "illicit . . . alcoholic

---

[1]    Specifically, in March 2021, Brewing & Distilling Analytical Services, LLC ("BDAS"), a certified analytical laboratory, tested two bottles of Synergy Kombucha, including one bottle that tested at 0.95% ABV and one bottle that tested at 0.88% ABV.  (*Id.* ¶¶ 89–91 & Ex. A).  In September 2018, BDAS tested two bottles of Synergy Kombucha, including one bottle that tested at 0.98% ABV and one bottle that tested at 0.77% ABV.  (*Id.* ¶ 92 & Ex. B).

[2]    The Synergy product line was originally called "Enlightened" until mid-2020.  (Mov. Br. at 5 n.2).

[3]    Because Plaintiffs attach the Declaration of Blake Ebersole to the Complaint, the Court may consider it here.  *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

[4]    The test results revealed an ABV as high as 2.05%—410% greater than the legal limit of 0.5% ABV.  (*Id.* ¶ 94 & Ex. C ¶ 12(d)).

beverage[]" with "no legal market value on any legitimate markets."  (*Id.* ¶ 124).  Accordingly, Plaintiffs allege they "suffered an ascertainable loss when they purchased Synergy Kombucha beverages that they otherwise would not have purchased."  (*Id.* ¶ 123).

Specifically, Hermoine King alleges she purchased Synergy Kombucha throughout 2019 and 2020 from retail stores in New Jersey and would not have done so had she known its true alcohol content.  (*Id.* ¶¶ 20 & 22).  Lad Joseph Bell alleges he purchased Synergy Kombucha from retail stores in New Jersey throughout 2019 and 2020 for himself and for his minor children and would not have done so had he known its true alcohol content.  (*Id.* ¶¶ 24–26).  Gabriella Bell alleges she consumed Synergy Kombucha purchased by her father, Mr. Bell, and purchased and consumed Synergy Kombucha on her own while she was a minor throughout 2019 and 2020 and would not have done so had she known its true alcohol content.  (*Id.* ¶¶ 28–31).  Finally, Jill Jones alleges she purchased Synergy Kombucha from retail stores in New Jersey throughout 2020 for herself and for her minor daughter and would not have done so had she known its true alcohol content.  (*Id.* ¶¶ 34–36).

**B.    Procedural History**

On May 26, 2021, Plaintiffs filed the Complaint against Defendants on behalf of themselves and all those similarly situated.  (*Id.* ¶¶ 7 & 105).  In their Complaint, they assert the following claims: (i) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.*, against both Defendants (Compl. ¶¶ 116–26); (ii) violations of the New Jersey racketeering statute ("NJRICO"), N.J.S.A. § 2C:41-1 *et seq.*, against both Defendants (Compl. ¶¶ 127–38); and (iii) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against GT Dave (Compl. ¶¶ 139–45).[5]  The Complaint

---

[5]    The Court notes that it refers to the paragraphs under Count Three of the Complaint, where the final paragraph appears to be misnumbered as "134."

4

seeks monetary and injunctive relief.  (Compl. ¶ 6).

On August 2, 2021, Defendants filed the instant motion to dismiss the Complaint, which was fully briefed in due course.  (D.E. No. 13; D.E. No. 18 ("Opp."); D.E. 22 ("Reply")).

## II.   LEGAL STANDARDS

Standing is a prerequisite to a federal court's subject matter jurisdiction and may be raised at any stage of a case.  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).  "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'"  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  In assessing a facial challenge, the Court accepts the factual allegations as true.  *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  Defendants raise a facial challenge, so the Court accepts Plaintiffs' factual allegations as true.

Similarly, in considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true and "constru[e] the alleged facts in favor of the nonmoving party."  *Aichele*, 757 F.3d at 358.  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 9(b), a plaintiff must plead fraud with particularity—"in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A plaintiff may meet this requirement by including the "'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 557, *as recognized in In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017). A plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* If a plaintiff sufficiently pleads "that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Article III Standing

As an initial matter, Defendants challenge Plaintiffs' Article III standing. (Mov. Br. at 11–20). Article III standing requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d Cir. 2016). The first element—injury-in-fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (quoting *Spokeo*, 578 U.S. at 338). It requires "the party invoking federal jurisdiction" to

"establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both 'concrete and particularized'; and third, that the injury is 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo*, 578 U.S. at 339).

A plaintiff must establish standing for each claim and for each form of relief sought, including monetary damages and injunctive relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). A plaintiff seeking injunctive relief must additionally show they are "'likely to suffer *future* injury' from the defendant's conduct" absent the requested injunction. *McNair v. Synapse Group Inc.,* 672 F.3d 213, 223 (3d Cir. 2012) (emphasis added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). The Court now addresses Plaintiffs' standing to pursue monetary damages and then injunctive relief.

> ### i. Monetary Damages

Defendants argue Plaintiffs fail to establish injury-in-fact for monetary damages because they do not allege that the specific Synergy Kombucha bottles they purchased were tested and contained 0.5% ABV or greater. (Mov. Br. at 11–12). Defendants also take issue with the test results cited by Plaintiffs, arguing they do not indicate details as to refrigeration, handling, and expiration dates. (*Id.* at 14). Defendants argue that "inferential leaps" are required to support Plaintiffs' Article III standing. (*Id.*). Defendants further argue Plaintiffs' allegations regarding how the kombucha fermentation process "may" continue after bottling and lead to increased alcohol content are not specific enough to Synergy Kombucha. (*Id.* at 17). The Court disagrees.

First, Defendants seek to elevate Plaintiffs' burden at the pleading stage. As noted above, the Court must accept Plaintiffs' factual allegations as true. And as Plaintiffs point out, the Complaint alleges that "*every* bottle of Synergy Kombucha contains greater than 0.5% ABV by the time the product reaches consumers." (Opp. at 4 (emphasis added) (quoting Compl. ¶ 56)).

Plaintiffs' "every bottle" allegation unambiguously includes the bottles they purchased.   In addition, Plaintiffs point to three exhibits attached to the Complaint to show that testing of Synergy Kombucha supports its allegations.   (*See id.* at 5; Compl. Exs. A, B & C).   Plaintiffs do not need to prove their case at the pleading stage.   Defendants may ultimately prevail on this issue on summary judgment or at trial after having the benefit of discovery and a more substantial factual record.

Second, Plaintiffs also point to the allegation that Synergy Kombucha is an "illicit . . . alcoholic beverage[]" with "no legal market value" on any legitimate market.   (Opp. at 5 & 25 (quoting Compl. ¶ 124)).   Consistent with Plaintiffs' argument, to meet the minimal pleading requirement, it is sufficient to allege "facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture," or, in other words, that the product was worth less than what Plaintiffs paid for.   (*Id.* at 4 (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018)).   Indeed, while the requisite injury-in-fact must be "concrete, particularized, and actual or imminent," *Ramirez*, 141 S. Ct. at 2203, "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous," *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)).   Injury-in-fact requires only that the claimant allege "some specific, 'identifiable trifle' of injury."   *Bowman*, 672 F.2d at 1151 (quoting *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973)).   And in this context, a plaintiff may sufficiently plead injury-in-fact by alleging that the consumer product she purchased was worth less than what she paid for.   *See In re Johnson & Johnson Talcum Powder*, 903 F.3d at 285.

Third, the Court's independent research uncovered comparable consumer product cases

holding that Article III standing is satisfied where economic injury is sufficiently pled notwithstanding that the allegedly misrepresented product is not the one actually purchased by the plaintiff. Indeed, "[c]ourts have permitted consumer claims in nationwide class actions regarding product mislabeling to move forward based on limited testing, including a single test on a single sample of the product at issue." *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-5070, 2017 WL 2215025, at \*12 (N.D. Ill. May 19, 2017) (collecting cases); *see also Fishon v. Mars Petcare U.S., Inc.*, 501 F. Supp. 3d 555, 561–62 (M.D. Tenn. 2020); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-3613, 2020 WL 1245130, at \*6–7 (N.D. Cal. Mar. 16, 2020). "Plaintiff[s] may rely on the testing results attached to [their] complaint to nudge [their] claims based on" defendant's misrepresentations "across the line from conceivable to plausible." *Gubala v. CVS Pharmacy, Inc.*, No. 14-9039, 2016 WL 1019794, at \*8 (N.D. Ill. Mar. 15, 2016) (quoting *Twombly*, 550 U.S. at 570).

In support of a contrary conclusion, Defendants cite *Rickman v. BMW of N. Am.*, No. 18-4363, 2019 WL 2710068 (D.N.J. June 27, 2019), and *In re McNeil Consumer Healthcare, Mktg. & Sales Pracs. Litig.*, MDL No. 2190, 2011 WL 2802854 (E.D. Pa. July 15, 2011). (Mov. Br. at 12–15). However, both cases are inapposite. In *Rickman*, the plaintiffs alleged that defendants installed deceptive technology known as "defeat devices" in vehicles to mask nitrogen oxide emissions. 2019 WL 2710068, at \*1, \*9–12. The court dismissed the complaint without prejudice because plaintiffs in nearly identical defeat device cases had conducted additional testing to sufficiently allege that the devices were "installed across the board." *Id.* at \*11. However, the beverages at issue here are distinguishable from vehicles in terms of the consumer's ability to test the consumed product. As discussed above, courts have permitted claims to proceed based on limited testing on more similar products. *See In re Herbal*

*Supplements Mktg.*, 2017 WL 2215025, at *12 (herbal supplements); *see also Fishon*, 501 F. Supp. 3d at 561–62 (pet food).  In *McNeil*, the plaintiffs alleged they suffered harm in connection with the purchase of several adult and children's medications manufactured by the defendant. 2011 WL 2802854 at *1.  The court dismissed the claims without prejudice for failure to show injury-in-fact because the plaintiffs failed to allege what specific harm they had suffered or to "identify which particular products they purchased" and instead used ambiguous umbrella terms. *Id.* at *1, *8–10.  However, the Court does not find that Plaintiffs' allegations here are ambiguous.  As explained, Plaintiffs allege that *every* bottle of Synergy Kombucha is mislabeled.

In sum, the Complaint alleges that "every bottle of Synergy Kombucha contains greater than 0.5% ABV by the time the product reaches consumers" (Compl. ¶ 56); that the beverage has "no legal market value on any legitimate markets" (*id.* ¶ 124); and that Plaintiffs "would not have purchased or consumed said products had [they] known the true alcohol contents of said beverages" (*id.* ¶¶ 22, 25, 31 & 35).  Thus, the Court need not make "inferential leaps" to determine standing.  Plaintiffs have plausibly alleged a concrete and particularized injury, fairly traceable to the conduct of Defendants, that may be redressed by an award of monetary damages.

Therefore, Plaintiffs have standing to pursue monetary damages.[6]

### ii.        Injunctive Relief

Defendants argue that Plaintiffs lack standing to pursue injunctive relief because they do not allege a sufficiently imminent or likely future harm, such as desire or intent to purchase Synergy Kombucha again, and instead rely solely on past harms.  (Mov. Br. at 19).  As

---

[6]        Defendants additionally argue that Plaintiffs do not have standing to pursue claims based on Defendants' alleged lobbying efforts to increase the threshold for regulation of alcoholic beverages to 1.25% ABV under the *Noerr-Pennington* doctrine, which Plaintiffs do not dispute.  (Mov. Br. at 16 (citing Compl. ¶ 103 & *Giles v. Phelan, Hallinan, & Schmieg, LLP*, No. 11-6239, 2013 WL 2444036, at *5–6 (D.N.J. June 4, 2013)); *see also* Reply at 9). Under the *Noerr-Pennington* doctrine, a defendant's lobbying efforts cannot form the basis of a RICO claim.  *Giles*, 2013 WL 2444036, at *5–6.  The Court notes that, first, Plaintiffs base their claims on conduct distinct from Defendants' alleged lobbying efforts, and, second, the Court need not rely on the alleged lobbying efforts to reach its conclusion regarding Article III standing.

Defendants point out, Plaintiffs allege that if Synergy Kombucha was marketed as an alcoholic beverage, they would not have purchased or consumed the product. (*Id.* at 19–20). According to Defendants, this means that Plaintiffs are not at risk of suffering future economic injury as required for a claim for injunctive relief. (*Id.* at 19). Plaintiffs address injunctive relief in a footnote to its opposition brief, stating that Plaintiffs are entitled to injunctive relief under the NJCFA. (Opp. at 24 n.22). The Court agrees with Defendants.

Notwithstanding any statutory right, to have constitutional standing to seek injunctive relief, a plaintiff must establish that he or she is "'likely to suffer future injury' from the defendant's conduct." *Johnson & Johnson Talcum Powder*, 903 F.3d at 292 (quoting *McNair*, 672 F.3d at 223). If anything, the Complaint alleges the opposite. Plaintiffs allege they would *not* have purchased or consumed Synergy Kombucha had they known the true alcohol content and/or that Synergy Kombucha was an alcoholic beverage. (Compl. ¶¶ 22, 25, 31, 35 & 36). And nothing in the Complaint suggests that Plaintiffs will purchase Synergy Kombucha in the future. *See Johnson & Johnson Talcum Powder*, 903 F.3d at 292.

Therefore, Plaintiffs do not have standing to pursue injunctive relief.[7]

B.     **RICO and NJRICO Causes of Action**

Defendants argue that the Complaint fails to state RICO and NJRICO causes of action. (Mov. Br. at 20–35). Specifically, Defendants argue that Plaintiffs do not allege (i) any predicate act of particularized racketeering activity; (ii) a pattern of such racketeering activity; or that (iii) injury proximately caused by Defendants. (*Id.* at 21). The Court disagrees. Except for Plaintiffs' attempt to plead wire fraud as a predicate act under RICO and NJRICO, and to plead

---

[7]     The Court recognizes that strictly enforcing the future injury requirement could, effectively, restrict the availability of injunctive relief in consumer fraud cases. *See, e.g.*, *Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, at *7 (D.N.J. Apr. 11, 2012). Regardless, this court is bound by Supreme Court and Third Circuit precedent.

violation of the Alcoholic Beverage Tax Law as a predicate act under NJRICO, Plaintiffs sufficiently plead a pattern of racketeering activity that caused them cognizable injury under RICO and NJRICO.

### i.      RICO

RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  "The RICO statute provides for civil damages for 'any person injured in his business or property by reason of a violation'" of the statute.  *In re Mercedes-Benz Emissions Litig.*, No. 16-0881, 2019 WL 413541, at *9 (D.N.J. Feb. 1, 2019) (alteration in original) (quoting *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 167 (3d Cir. 2013)), *vacated on other grounds*, 797 F. App'x 695 (3d Cir. 2020).  "It is well-established in this Circuit that RICO itself need only be pled under Rule 8(a), and that Rule 9(b) applies only to RICO predicate acts that themselves require the higher pleading standard." *Myrus Hack, LLC v. McDonald's Corp.*, No. 05-2700, 2009 WL 872176, at *9 (D.N.J. Mar. 30, 2009) (citing *See Zax Environmental, Inc. v. Plant Constr. Co., LLC,* No. 06-1020, 2008 WL 2509759, at *2 (W.D. Pa. June 18, 2008)).

### a.      RICO Standing

As a threshold matter, to have standing to bring a RICO claim,[8] a plaintiff must show (i) that he or she was injured (ii) because of a violation of the statute.  *Gratz v. Ruggiero*, 822 F. App'x 78, 81 (3d Cir. 2020 (citing *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005)).  First,

---

[8]      "Civil RICO 'standing' is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction." *Anderson*, 396 F.3d at 269.

to adequately plead injury, the complaint must contain allegations of actual monetary loss. *Mercedes-Benz*, 2019 WL 413541, at *9.  "What is important . . . is that the overpayment occurred at the time of purchase, rather than being 'contingent on a future occurrence or on the vagaries of the free market.'"  *Id.* at *11 (quoting *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1072 (E.D. Mich. 2018)).  Second, to adequately plead causation, a plaintiff must show that the defendant's conduct was not only a "but for" cause of the injury but also the proximate cause, meaning the injury was the direct result of racketeering "rather than an attenuated harm following a 'long chain of intervening causes.'"  *Id.* at *9 (quoting *Anderson*, 396 F.3d at 270).

Accepting the allegations as true, the Court finds that Plaintiffs establish RICO standing. First, Plaintiffs sufficiently plead that they suffered cognizable injury, specifically actual monetary loss at the time the purchase was made.  *See Mercedes-Benz*, 2019 WL 413541, at *11. They claim that Synergy Kombucha has no legal market value, and that Plaintiffs would not have purchased and/or consumed the beverage had they known the true alcohol content and/or that Synergy Kombucha was an alcoholic beverage.  Second, Plaintiffs sufficiently plead that such injury was proximately caused by Defendants' alleged violation of RICO.  They claim the label on each bottle advertises Synergy Kombucha as a health product and mispresents and/or omits the alcohol content in each bottle.  (Compl. ¶¶ 1–5 & 52–56).  They further claim that GT's Living Foods "markets, advertises, distributes, and sells its Synergy Kombucha throughout the State of New Jersey and throughout the United States."  (*Id.* ¶ 14).  And they claim that they would not have purchased Synergy Kombucha if it was appropriately labeled and marketed.

The Court rejects Defendants' argument that Plaintiffs do not plausibly allege the specific bottles they purchased contained 0.5% ABV or higher.  (Mov. Br. at 35).  As discussed in Section III.A.(i), *supra*, the Court must accept Plaintiffs' allegation that "every bottle" of

Synergy Kombucha is mislabeled, and the Court may reasonably infer from that fact that Plaintiffs purchased mislabeled bottles.

Therefore, the Court concludes that Plaintiffs establish RICO standing.

### b.    RICO Elements

"To establish a RICO claim, a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Gratz*, 822 F. App'x 80–81 (quoting *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002)).  A "pattern" of racketeering activity consists of at least two acts of racketeering activity within ten years of each other.  18 U.S.C.A. § 1961(5).  The predicate acts of racketeering activity must also be related and continuous, rather than isolated events.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991); *see also Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 250 (D.N.J. 2000).  The RICO statute defines racketeering by a list of criminal activities that constitute predicate acts.  *See* 18 U.S.C. § 1961(1).

Defendants argue the Complaint provides only threadbare recitals of the statutory requirements for RICO predicate acts—namely, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and Travel Act violations under 18 U.S.C. § 1952(a) & (b).  (Mov. Br. at 21 (citing Compl. ¶ 144)). With the exception of wire fraud, the Court disagrees.

*Mail and Wire Fraud:* The elements of mail or wire fraud include "(1) a scheme to defraud, (2) the use of the mails or wires for the purpose of executing the scheme, and (3) fraudulent intent."  *In re Valent Pharms. Int'l, Inc.*, No. 16-3087, 2020 WL 9809347, at *22 (D.N.J. Aug. 24, 2020); *see also United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005).  A plaintiff must identify how the enterprise committed the alleged scheme to defraud and must identify which parties were responsible for which fraudulent activities and how the mails and/or

14

wires were used to carry out that scheme.  *Chagby v. Target Corp.*, No. 08-4425, 2008 WL 5686105, at *4 (C.D. Cal. Oct. 27, 2008), *aff'd*, 358 F. App'x 805 (9th Cir. 2009).  "A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Lum*, 361 F.3d at 223 (citations omitted).  Mail and wire fraud must be pleaded with heightened specificity under Rule 9(b).  *See Schering-Plough Corp.*, 2009 WL 2043604, at *25.  Intent, however, may be alleged generally and "inferred from the scheme alone."  *Mercedes-Benz*, 2019 WL 413541, at *18 (citing Fed. R. Civ. P. 9(b)); *see also In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2017 WL 3642003, at *9 (D.N.J. Aug. 23, 2017).

Moreover, with respect to mail and wire fraud, "allegations of omissions—as opposed to affirmative misrepresentations—will inevitably be less specific.  Misrepresentations occur at a definite point in time, but omissions occur over periods of time.  And, because misrepresentations involve action while omissions involve inaction, plaintiffs are less likely to uncover discrete evidence of omissions . . . ."  *Mercedes-Benz,* 2019 WL 413541, at *17.  "As such, 'plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim.'"  *Id.* (quoting *Feldman v. Mercedes-Benz USA,* 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012)).

With respect to mail fraud, specifically, "the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'"  *Emcore Corp.*, 102 F. Supp. 2d at 245 (alterations in original) (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989)).  And use of the mails includes use of the Postal Service or "any private or commercial interstate carrier."  *See* 18 U.S.C § 1341.

Plaintiffs bring a RICO claim against GT Dave, as "a person who was employed by or associated with GT's Living Foods, an enterprise," for "conduct[ing] or participat[ing] directly or indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity." (Compl. ¶ 143). Plaintiffs allege GT Living Foods distributes Synergy Kombucha products to retail stores throughout the State of New Jersey and the United States where they are sold among non-alcoholic beverages. (*Id.* ¶¶ 48 & 63). Plaintiffs allege that Defendants' marketing and labeling practices constitute "affirmative misrepresentations, knowing omissions and/or unconscionable business practices" that "breached consumers' reasonable expectations." (*Id.* at ¶ 5).

To start, Plaintiffs fail to sufficiently plead wire fraud as a predicate act. To sufficiently plead wire fraud as a predicate act, a plaintiff must allege misrepresentations and/or omissions were transmitted through the wires to defraud Plaintiffs. *See Chagby*, 2008 WL 5686105, at *4; *see also Valent Pharms.*, 2020 WL 9809347, at *22. Plaintiffs allege Defendants sell Synergy Kombucha on the company's website and use the Internet to disseminate advertising and marketing materials representing Synergy Kombucha as a health beverage. (Compl. ¶¶ 2, 48 & 144). Absent from the Complaint, however, is any allegation that any named Plaintiff either purchased Synergy Kombucha from the company's website or viewed marketing material on the Internet. Therefore, Plaintiffs' allegations do not support a showing of wire fraud as a predicate act with requisite specificity. *See Schering-Plough Corp.*, 2009 WL 2043604, at *25.

However, Plaintiffs sufficiently allege mail fraud as a predicate act. Plaintiffs allege Defendants knowingly failed to disclose the true alcohol content of Synergy Kombucha in the course of distributing the products—thereby using the mails—to retail stores from which Plaintiffs purchased the products from at least as early as 2019 through 2020. *See* 18 U.S.C §

1341.  (*See also* Compl. ¶¶ 20, 24, 28–30, 34, 48 & 56).  These allegations are pleaded with requisite specificity, and are related and continuous, therefore satisfying the "pattern" element of RICO.  18 U.S.C. § 1961(5).  Further, the allegations give rise to an inference of fraud reasonably calculated to deceive consumers of ordinary prudence.  *See Lum*, 361 F.3d at 223. Thus, Plaintiffs have "averred generally" fraudulent intent sufficient for purposes of notice pleading.  *Emcore Corp.*, 102 F. Supp. 2d at 248 (citing *Seville*, 742 F.2d at 791); *see also Mercedes-Benz*, 2019 WL 413541, at * 18.[9]

Therefore, the Court finds that Plaintiffs sufficiently plead mail fraud as a RICO predicate act.

***Travel Act:*** The elements of a Travel Act violation include (i) use of the mail or any facility in interstate or foreign commerce (ii) with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," followed by (iii) performance of or attempt to perform an act of management, establishment, carrying on, or facilitation of the enumerated unlawful activity.  18 U.S.C. § 1952(a).  "Unlawful activity" includes a business enterprise engaging in unlawful liquor distribution.  *Id.* § 1952 (b); *see also United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019).

---

[9]    Defendants' reliance on *Lentini v. Ruggiero*, No. 12-3586, 2013 WL 5913683, at *3 (D.N.J. Oct. 31, 2013) is misplaced.  (*See* Mov. Br. at 26).  In *Lentini*, the Court considered the defendant's alleged lack of scienter to defraud as a defense to the charge of mail fraud for purposes of deciding a motion for default judgment.  2013 WL 5913683, at *3.  On a motion to dismiss, however, the Court need not consider defenses to the allegations in the Complaint.  *See, e.g.*, *Zuber*, 871 F.3d at 258.

Further, Defendants appear to argue that intent to defraud regarding Synergy Kombucha is somehow precluded by the fact that Defendants also market a separate line of alcoholic kombucha.  (*See* Mov. Br. at 31). However, the Court finds that Defendants' conduct with respect to another product is inconsequential as to whether the allegations are sufficient to state a claim with respect to Synergy Kombucha.  To the extent that such conduct is relevant, Defendants raise a merits argument, and the Court may not decide the merits at this juncture.

Plaintiffs allege that Defendants intentionally engage in the unlawful sale of alcohol to people of all ages in the course of the distribution and sale of Synergy Kombucha. (Compl. ¶¶ 4 & 121). That allegation, in conjunction with those which form the basis for mail fraud, sufficiently alleges that Defendants (i) use the mails in interstate commerce (ii) with intent to carry out the unlawful activity of unlawful liquor distribution, and (iii) allegedly carry on such activity. *See Grider v. Keystone Health Plan Cent., Inc.*, No. 01-5641, 2003 WL 22182905, at *5 (E.D. Pa. Sept. 18, 2003).

Defendants argue that Plaintiffs fail to allege that they engage in unlawful activity *after* they distribute Synergy Kombucha across state lines because the product is out of their control at that point. (Reply at 11). The Court disagrees. Plaintiffs clearly allege that Defendants distribute and sell Synergy Kombucha after it crosses state lines.

Defendants further argue that Plaintiffs fail to allege intent to engage in unlawful liquor distribution because Synergy Kombucha contains a warning label disclosing that it contains alcohol. (*Id.* at 10). Specifically, Defendants point to a non-binding case confirming class settlement terms, including the addition of an alcohol warning label on a health beverage similar to the warning label on Synergy Kombucha, which the district court noted would "adequately ensure that consumers are informed about the alcohol content." (*Id.* (citing *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *8 (C.D. Cal. Aug. 22, 2017)). This argument is not persuasive for three reasons: first, Plaintiffs need only allege intent at the pleading stage; second, such a label was agreed upon as sufficient by the plaintiff class as part of settlement; and third, argument concerning the merits as to the sufficiency of the warning label is a merits-based argument and not appropriately before the Court at this stage.

Therefore, Plaintiffs sufficiently plead Travel Act violations as RICO predicate acts.

*Defendants' Other Arguments:*  Defendants' additional arguments are not convincing. First, Defendants argue that Plaintiffs fail to allege any racketeering activity by GT Dave personally because allegations of "mere association" are insufficient to show GT Dave engaged in a pattern of racketeering activity.  (Mov. Br. at 27).  The Court disagrees.  To be liable under RICO, a defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370–71.  "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

The Complaint alleges that GT Dave, the sole shareholder and chief executive officer of GT's Living Foods, "being a person who was employed by or associated with [GT's Living Foods], an enterprise, conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity."  (Compl. ¶¶ 10 & 133).  Plaintiffs allege that GT Dave "manages and exercises control over the day-to-day activities of Defendant GT's Living Foods and he is the individual primarily responsible for the conduct of Defendant GT's Living Foods and the continuing violations of federal and state law alleged herein."  (*Id.* ¶ 11).  Therefore, Plaintiffs sufficiently allege GT Dave participated in a pattern of racketeering activity.

Second, Defendants argue the Complaint consists of impermissible group pleadings incapable of putting GT Dave on adequate notice of the factual basis for the claims against him. (Mov. Br. at 28).  The Court disagrees.  "The Third Circuit cautions that Rule 9(b) should not be applied so strictly as to cancel out the 'general simplicity and flexibility contemplated by the [Federal Rules of Civil Procedure].'"  *Emcore Corp.*, 102 F. Supp. 2d at 249–50 (quoting

*Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3rd Cir. 1989)).   The Complaint either refers to "GT Dave," "GT's Living Foods" or "Defendants" so as not to create vagaries incapable of putting either Defendant on notice of the factual basis for the Complaint.   Plaintiffs' RICO claim clearly states that it is brought against GT Dave.   (Compl. ¶ 139).   Therefore, Plaintiffs have sufficiently alleged that GT Dave participated in the alleged fraudulent mislabeling of all bottles of Synergy Kombucha so as to allow Defendants to prepare their strategy.

Thus, Plaintiffs' allegations fairly notice Defendants of the claims against them, and Plaintiffs should be allowed to proceed through discovery.   Accordingly, the Court finds Plaintiffs sufficiently state a claim under RICO.

### ii.      NJRICO

Defendants argue that Plaintiffs fail to state an NJRICO cause of action.   (Mov. Br. at 20–35).   The Court disagrees.

"NJRICO is broader in scope than the federal RICO statute."   *Ford Motor Co. v. Edgewood Properties, Inc.*, No. 06-1278, 2009 WL 150951, at *10 (D.N.J. Jan. 20, 2009), *on reconsideration in part*, 2009 WL 2488174 (D.N.J. Aug. 11, 2009).   NJRICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activities or a collection of unlawful debt.

N.J.S.A. 2C:41–2(c).   An NJRICO claim requires a plaintiff to prove "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of

racketeering activity." *State v. Ball*, 632 A.2d 1222, 1236 (N.J. Super. Ct. App. Div. 1993).  A plaintiff must show injury proximately caused by the defendant's violations.  *Ford Motor*, 2009 WL 150951, at *10.  As with RICO, NJRICO itself need only be pled under Rule 8(a), and Rule 9(b) applies only to predicate acts that themselves require heightened pleading.  *See Myrus Hack*, 2009 WL 872176, at *9.

A "[p]attern of racketeering activity" requires (i) "at least two incidents of racketeering conduct" within ten years of each other; and (ii) "[a] showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."  N.J.S.A. § 2C:41-1d.  Thus, "[u]nlike the federal statute, NJRICO, as interpreted by the New Jersey courts, does not place as much emphasis on 'continuity,' but instead, focuses on the 'relatedness' of the activity."  *Ford Motor*, 2009 WL 150951, at *12 (quoting *Metz v. United Counties Bancorp,* 61 F. Supp. 2d 364, 373 (D.N.J. 1999)).

In particular, Defendants argue that Plaintiffs provide only "threadbare recitals" of the statutory requirements of NJRICO predicate acts.  (Mov. Br. at 20–35 (citing Comp1. ¶ 136)).  However, with the exception of wire fraud (discussed above) and the Alcoholic Beverage Tax Law Act, the Court disagrees.

For the reasons discussed in Section II.B.(i), *supra*, the Court is satisfied that Plaintiffs sufficiently plead mail fraud and Travel Act violations as NJRICO predicate acts.[10]  As previously noted, Plaintiffs allege the following series of facts: GT Living Foods distributes

---

[10]    Also as previously discussed, Plaintiffs do not adequately allege the predicate act of wire fraud because there is no allegation that Defendants' online marketing caused the named Plaintiffs to purchase Synergy Kombucha.

Synergy Kombucha products to retail stores throughout New Jersey and the United States where it is sold among non-alcoholic beverages available to consumers of all ages and markets Synergy Kombucha as a health product on its label; Plaintiffs would not have purchased and/or consumed Synergy Kombucha from retail stores had they known the true alcohol content and/or that Synergy Kombucha was an alcoholic beverage; both Defendants either knew or should have known that every bottle of Synergy Kombucha contains greater than 0.5% ABV by the time it reaches consumers; and GT Dave is the sole shareholder and chief executive officer of GT's Living Foods.  Accepting the allegations as true, Plaintiffs sufficiently allege that Defendants are engaged in trade or commerce and that GT Dave participated in the conduct of the affairs of GT's Living Foods through a pattern of racketeering activity that proximately caused Plaintiffs' injuries.  Both GT Dave and GT's Living Foods constitute an "enterprise" under NJRICO's statutory definition.  (Compl. at ¶¶ 131–32 (citing N.J.S.A. § 2C:41-1(c))).  Defendants were engaged in "trade or commerce" at all relevant times as defined by N.J.S.A. § 2C:41-1(h).  (*Id.* ¶ 130).  The alleged predicate acts of wire fraud and Travel Act violations are sufficiently related so as to constitute a pattern.  *See Ford Motor*, 2009 WL 150951, at *12.  Thus, Plaintiffs sufficiently allege Defendants engaged in at least two predicate acts of racketeering activity.

Plaintiffs also allege violation of the following statutes as predicate acts under NJRICO: (i) N.J.S.A. § 2C:20-4 ("theft by deception"), (ii) N.J.S.A. § 2C:21-7(d) and (e) ("deceptive business practices"), (iii) N.J.S.A. § 33:1-1 *et seq.* ("Title 33"), and (iv) N.J.S.A. § 54:41-1 *et seq.* ("Alcoholic Beverage Tax Law").  (Compl. ¶ 136–37).  The Court analyzes each in turn.

***Theft by Deception:*** The theft by deception statute provides:

> A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:

> a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
>
> b. Prevents another from acquiring information which would affect his judgment of a transaction; or
>
> c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

N.J.S.A. § 2C:20-4.  As discussed above, Plaintiffs allege, and the Court accepts as true, that Defendants created a false impression that Synergy Kombucha is a non-alcoholic beverage and thereby sold a product with no legal market value.  Therefore, Plaintiffs sufficiently allege theft by deception as an NJRICO predicate act.

*Deceptive Business Practices:*  A person commits deceptive business practices if in the course of business he either "[s]ells, offers or exposes for sale adulterated or mislabeled commodities" or "[m]akes a false or misleading statement in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the purchase or sale of property or services."  N.J.S.A. § 2C:21-7(d) and (e).  As discussed above, Plaintiffs allege, and the Court accepts as true, that Defendants create a false impression that Synergy Kombucha is a non-alcoholic beverage in the course of distributing the product.  Therefore, Plaintiffs sufficiently allege theft by deception as an NJRICO predicate act.

*Title 33:*  Title 33 governs license requirements for manufacture and sale of alcoholic beverages.  *See* N.J.S.A. § 33:1-1 *et seq.*  Title 33 provides the framework and associated fees for obtaining the appropriate licensing for such manufacture and sale of alcoholic beverages.  *See id.*

§§ 33:1-9–33:1-12. Plaintiffs allege Defendants engage in the sale of Synergy Kombucha, a mislabeled alcoholic beverage, but are not properly licensed to manufacture or sell alcoholic beverages within the state of New Jersey. (Compl. ¶ 81). Therefore, Plaintiffs sufficiently allege Title 33 violations as NJRICO predicate acts.[11]

***Alcoholic Beverage Tax Law:*** The Alcoholic Beverage Tax Law governs state taxation of alcoholic beverages. N.J.S.A. § 54:41-1 *et seq.* Under the statute, "beer" is defined as beer, lager beer, ale, stout, porter, and all similar fermented malt beverages having an alcoholic content of one-half of one per centum (1/2 of 1%) or more by volume." *Id.* § 54:41-2. TTB regulations provide that the "tax on beer [is] determined *at the time of its removal* for consumption or sale." 27 C.F.R. §§ 25.159(a) & 25.11 (emphasis added) (defining "remov[al] for consumption or sale" as either "(a) the sale and transfer of possession of beer for consumption at the brewery, or (b) any removal of beer from the brewery").

Plaintiffs allege that Defendants do not pay state or federal excise taxes on the sale of Synergy Kombucha as an alcoholic beverage. (Compl. ¶ 82). Defendants argue that Plaintiffs do not sufficiently allege violation of the Alcoholic Beverage Tax Law because, pursuant to the regulations, the tax on beer is determined at the time of removal for consumption or sale, and the Complaint alleges that Synergy Kombucha is an alcoholic beverage at the time it reaches consumers. (Mov. Br. at 31–33). Plaintiffs do not respond to this argument. The Court agrees with Defendants. Plaintiffs do not allege that Synergy Kombucha is an alcoholic beverage at the time of removal from Defendants' manufacturing facility, and New Jersey law sets the tax on

---

[11]    Defendants argue GT's Living Foods "is registered with New Jersey's Division of Alcoholic Beverage Control to sell its alcoholic Classic and Hard kombucha lines in New Jersey." (Mov. Br. at 31). In support, Defendants cite a TTB "Brewer's Notice" and registration with the State of New Jersey Department of Law and Public Safety Division of Alcoholic Beverage Control for its Classic and Hard kombucha lines, both of which appear to have expired on October 13, 2017 and December 31, 2017, respectively. (D.E. Nos. 13-7 & 13-8). Even assuming proper registration for these beverages, the Court notes that such registration does not preclude Plaintiffs from alleging that Defendants are not authorized to sell *Synergy Kombucha* specifically as an alcoholic beverage.

beer "*at the time of its removal* for consumption or sale."  27 C.F.R. §§ 25.159(a) & 25.11 (emphasis added).  Therefore, Plaintiffs fail to allege violation of the Alcoholic Beverage Tax Law as a predicate act of racketeering activity under NJRICO.

In sum, but for the their claims concerning wire fraud and the Alcohol Beverage Tax Law, Plaintiffs sufficiently plead NJRICO predicate acts.  Accordingly, Plaintiffs state a claim under NJRICO.

### C.     NJCFA

Defendants argue that Plaintiffs fail to state a claim under the NJCFA.  (Mov. Br. at 37–40).  The Court disagrees.

The NJCFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace."  *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 (3d Cir. 2013) (quoting *Gonzalez v. Wilshire Credit Corp.,* 25 A.3d 1103, 1114 (N.J. 2011)).   To constitute consumer fraud, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer."  *Id.* (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 655 A.2d 417, 430 (N.J. 1995)).  The elements of a NJCFA claim are "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Gonzalez,* 25 A.3d at 1115.  "Unlawful practice" is defined as:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, *misrepresentation*, or the knowing, concealment, suppression, or *omission of any material fact with intent that others rely upon such concealment*, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

N.J.S.A. § 56:8-2 (emphases added).

A showing of intent is necessary for omission liability.  *See Dugan v. TGI Fridays, Inc*., 171 A.3d 620, 636 (N.J. 2017).   "An omission occurs where the defendant (1) knowingly concealed (2) a material fact, (3) with the intention that the consumer rely upon the concealment."  *Francis E. Parker Memorial Home, Inc. v. Georgia Pacific LLC*, 945 F. Supp. 2d 543, 559 (D.N.J. 2013).

Plaintiffs sufficiently allege Defendants intentionally engaged in misleading practices and/or omissions that caused ascertainable loss for purposes of NJCFA.  The Complaint sets forth allegations that Defendants made knowing material misrepresentations and/or omissions by marketing and advertising Synergy Kombucha as a health beverage from at least as early as 2019 to 2020.  Plaintiffs plausibly allege that Defendants (i) knowingly concealed (ii) the alcohol content of Synergy Kombucha (iii) with the intention that the consumer rely upon the concealment.  *See id.*  Plaintiffs also allege they suffered an ascertainable loss, specifically, by purchasing a product with no legal market value.  Plaintiffs further allege they would not have purchased Synergy Kombucha had they known of the allegedly misrepresented and/or omitted information, thereby establishing causation.

Defendants argue that Plaintiffs' NJCFA claim fails to plead causation between the allegedly fraudulent conduct of GT's Living Foods and Plaintiffs' loss.  (Mov. Br. at 37).  Specially, Defendants again argue that Plaintiffs do not allege that they personally purchased Synergy Kombucha bottles that contained higher than 0.5% ABV.  (*Id.* at 38).  For the reasons explained above, the Court disagrees.  Plaintiffs allege that *every bottle* of Synergy Kombucha is—and therefore the bottles that they purchased were—mislabeled.

Defendants additionally cite *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003), to argue that Plaintiffs do not satisfy the causation

element.  (Mov. Br. at 37–38).  However, *Schering-Plough Corp.* is distinguishable.  There, the court found that the plaintiffs could not plead causation by relying on advertisements of an FDA-regulated prescription drug where "the intervention by a physician in the decision-making process" protects consumers from solely relying on advertisements.  842 A.2d at 177–78.  As Plaintiffs point out, Synergy Kombucha, unlike a regulated prescription drug, is readily available for consumers to purchase from retail stores regardless of the consumer's age, and the words used in the marketing and labeling of Synergy Kombucha appear to have a direct impact on purchasing decisions made by consumers.  (Opp. at 23).  In other words, there is no similar intervening act that breaks the causal chain between Defendants' alleged misrepresentations and/or omissions and Plaintiffs' purchase.  Therefore, the Court finds that Plaintiffs satisfy the causation element required for the NJCFA claim.

Defendants additionally argue the Complaint does not allege particularized facts to show that either Defendant knowingly sold Synergy Kombucha containing 0.5% ABV or greater to Plaintiffs.  (Mov. Br. at 39–40).  In response, Plaintiffs argue the Complaint satisfies Rule 9(b) by placing Defendants on notice of their alleged misconduct and fraud.  (Opp. at 26–27).  The Court agrees with Plaintiffs.  Plaintiffs' allegations meet the pleading standards, and Defendants are on notice of the claims against them.  *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007).

Therefore, Plaintiffs sufficiently state a claim under the NJCFA.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.  Plaintiffs lack standing to pursue injunctive relief, they fail to plead wire fraud as a predicate act for their claims under RICO and NJRICO, and fail to plead violation of

the Alcoholic Beverage Tax Law as a predicate act of racketeering activity under NJRICO.

Dismissal of those aspects of Plaintiffs' claims is *without prejudice*.   The Complaint may

otherwise proceed.  An appropriate Order follows.


Date: July 11, 2022                                                    */s/ Esther Salas*
                                                                       **Hon. Esther Salas, U.S.D.J.**